IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

| | |
|---|---|
| REGIONS BANK, a<br>state banking association, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION NO. CV-2005-B-14<br>) |
| ESTATE OF CHARLES G. RYLES,<br>CHECKCARE SYSTEMS, and<br>fictitious parties A, B, C and D, being<br>the heirs and/or devisees of Charles G.<br>Ryles, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## **COMPLAINT**

### Parties

1.  Plaintiff, Regions Bank ("Regions"), is a state banking association with offices in and transacting business within Pike County, Alabama.

2.  Defendant, Estate of Charles G. Ryles ("Estate"), whose Executor/Executrix/ Administrator/Administratrix is unknown to Regions, is, upon information and belief, being administered in the Probate Court of Pike County, Alabama, Charles G. Ryles ("Ryles") being deceased.

3.  Defendant, Checkcare Systems ("Checkcare"), is, upon information and belief an entity transacting business within Pike County, Alabama.

293961.wpd

4. Fictitious Parties A, B, C and D are the heirs and/or devisees of Ryles who do or may claim an interest in the real property described hereinbelow.

### Jurisdiction and Venue

5. This Court has jurisdiction over this proceeding pursuant to the provisions of *Ala. Code* § 12-11-30(1) (1975).

6. Venue is proper in this Court pursuant to the provisions of *Ala. Code* § 6-3-2(b) (1975) and *Rule 82(b)(1)(B) and (c)* of the *Alabama Rules of Civil Procedure*.

### Factual Allegations

7. On or about August 22, 2003, a Promissory Note ("2003 Note") was executed and delivered to Regions in the principal amount of $15,008.87 by Ryles whereby he promised to make monthly payments to Regions. The 2003 Note was secured by a Mortgage dated August 22, 2003 ("2003 Mortgage") executed and delivered by Ryles to Regions granting a first priority lien on certain real property located in Pike County, Alabama ("Property"), more particularly described as follows:

> Lot 6, according to the plat of Thomas Heights Subdivision as recorded in the Office of the Judge of Probate of Pike County, Alabama in Plat Book 3, Page 127.

A copy of the 2003 Mortgage recorded in Book 2003, Page 83 in the Office of the Judge of Probate of Pike County, Alabama is attached hereto as Exhibit A.

8. The 2003 Note was a renewal of a prior Note from Ryles in favor of Regions dated December 7, 1994 ("1994 Note") and secured by a Mortgage on the Property of even date ("1994 Mortgage"). Neither the indebtedness under the 1994 Note nor the security

under the 1994 Mortgage was released or discharged by the 2003 Note and/or the 2003 Mortgage. A copy of the 1994 Mortgage recorded in Book 418, Page 511 in the Office of Judge of Probate of Pike County, Alabama is attached hereto as Exhibit B.

9. On or about November 24, 2004, an individual named Verlinda Boswell ("Boswell") submitted funds to pay the outstanding indebtedness evidenced by the 2003 Note, apparently in anticipation of receiving a deed to the Property securing the 2003 Mortgage from Regions, which, of course, is a legal impossibility. Boswell demanded that Regions return these funds to her after realizing she could not obtain a deed from Regions, and Regions has done so.

10. After November 24, 2004 and prior to January 13, 2005, a Discharge of Mortgage ("Discharge) was executed by Regions as to the 2003 Mortgage. A copy of the Discharge presently being recorded in the Office of the Judge of Probate of Pike County, Alabama. No discharge or release of the 1994 Mortgage appears of record in the Office of the Judge of Probate of Pike County.

11. The 2003 Note secured by the 2003 Mortgage has not been paid or satisfied as is erroneously reflected in the Discharge, and the indebtedness due thereunder exceeds $15,000.00. The 1994 Note secured by the 1994 Mortgage has not been paid or satisfied.

12. Checkcare has a judgment against Ryles in the amount of $573.07, which judgment is recorded in Misc. Book 28, Page 192, in the records of the Office of the Judge of Probate of Pike County, Alabama ("Checkcare Judgment"), prior to recordation of the 2003 Mortgage but subsequent to recordation of the 1994 Mortgage. There are no other

mortgages or liens of record filed in the Office of the Judge of Probate of Pike County, Alabama which are prior or junior to the 1994 Mortgage. Regions will file a Notice of *Lis Pendens* in the Office of the Judge of Probate of Pike County, Alabama, applicable to the Property, a copy of which is attached hereto as Exhibit C.

### First Cause of Action
### (Expungement of Discharge of Mortgage)

13. Regions realleges and incorporates by reference the allegations in paragraphs 1 - 12 above.

14. A manifest injustice will result if the Property is not subject to the 2003 Mortgage of Regions securing the 2003 Note.

15. There is an actual, justiciable controversy by and between Regions and Defendants as to the rights of Regions as lienor under the 2003 Mortgage on the Property.

16. Plaintiff seeks declaratory relief and a construction of its rights under the 2003 Mortgage and applicable law with respect to the Property.

17. Plaintiff further seeks that the Discharge be expunged from the records of the Office of the Judge of Probate of Pike County, Alabama and the 2003 Mortgage reinstated.

WHEREFORE, the premises considered, Plaintiff requests a declaratory judgment construing the rights of Plaintiff as lienor under the 2003 Mortgage and applicable law, expungement of the Discharge and reinstatement of the 2003 Mortgage, and for such other, further and different relief as may be appropriate, together with costs of Court.

## Second Cause of Action
### (Equitable Lien)

18. Regions realleges and incorporates by reference the allegations in paragraphs 1 - 17 above.

19. Regions received monies in good faith from Boswell, which monies were applied by Regions to the 2003 Note secured by the 2003 Mortgage, thereby benefitting Defendants' respective interests in the Property.

20. In the event the Court does not expunge the Discharge and reinstate the 2003 Mortgage, Defendants would be unjustly enriched as a result of the putative satisfaction of the 2003 Note and 2003 Mortgage without Defendants having paid such sums, as well as any possible concomitant effect on the 1994 Note and 1994 Mortgage.

21. It would be inequitable for the Estate and/or the fictitious party Defendants to retain legal title to the Property and enjoy the beneficial interests therein, encumbered only by the Checkcare Judgment, and for the Checkcare Judgment to be a superior lien as to Regions.

WHEREFORE, the premises considered, Plaintiff requests that the Court, in equity, declare an equitable lien upon the Property to the extent that the 1994 Mortgage and/or 2003 Mortgage do not legally and validly create such liens, that said equitable lien be superior to the Checkcare Judgment, and for such other, further and different relief as may be appropriate, together with costs of Court.

### Third Cause of Action
### (Declaratory Judgment)

22. Regions realleges and incorporates by reference the allegations in paragraphs 1 - 21 above.

23. An actual, justiciable controversy exists between Regions and Defendants regarding the rights of Regions with respect to the 1994 Mortgage and to revival and enforcement of the 2003 Mortgage, and the relative priorities of the 1994 Mortgage, revived 2003 Mortgage and the Checkcare Judgment.

24. Pursuant to *Ala. Code* § 6-6-220 *et seq.* (1975), Regions requests a declaratory judgment declaring the rights, duties, relative priorities and obligations of the parties with respect to the Property, the 1994 Mortgage, the 2003 Mortgage and the Checkcare Judgment, revival of the 2003 Mortgage and enforcement thereof for the benefit of Regions.

WHEREFORE, the premises considered, Plaintiff demands declaratory judgment that the 2003 Mortgage may be revived and enforced for the benefit of Plaintiff, and that, the 1994 Mortgage is superior to the Checkcare Judgment, and for such other, further and different relief, as may be appropriate, together with costs of Court.

/s/ Alan C. Christian

| Alan C. Christian | CHR010 |
| Rick A. LaTrace | LAT107 |

Attorneys for Plaintiff,
   Regions Bank
Post Office Box 1988
Mobile, Alabama 36633
(251) 432-7682; fax (251) 432-2800

OF COUNSEL:

JOHNSTONE, ADAMS, BAILEY, GORDON & HARRIS, L.L.C.

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL**

Estate of Charles G. Ryles
c/o James N. Thomas, Esq.
Post Office Box 974
Troy, Alabama  36081

Checkcare Systems
c/o Richard C. Dean, Jr., Esq.
Post Office Box 1028
Montgomery, Alabama  36101



THE LENDING CENTER
GNL-TV
CC 06385

WHEN RECORDED MAIL TO:
Regions Loan Servicing Release
P O Box 4897
Montgomery, AL 36103

2003   83
Recorded in the Above
MORTGAGE  Book & Page
10-02-2003 10:26:48 PM
William C. Stone - Probate Judge
Pike County, AL

_____ SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY



*DOC1850420038200002139300000050*

## MORTGAGE

THIS MORTGAGE dated August 22, 2003, is made and executed between CHARLES G. RYLES AKA CHARLIE G. RYLES, whose address is 352 ASTER AVE, TROY, AL 36081-4334; AN UNMARRIED MAN (referred to below as "Grantor") and REGIONS BANK, whose address is 63 SOUTH COURT SQUARE, TROY, AL 36081 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages, grants, bargains, sells and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in PIKE County, State of Alabama:

See Exhibit "A", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 352 ASTER AVE, TROY, AL 36081-4334.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S WAIVERS. Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency, to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements. Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to

Loan No: 02200392000021363     MORTGAGE (Continued)     Recorded in the Above MORTGAGE Book & Page 10-02-2003 10:26:48 AM   Page 5

(16)

without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Mortgage shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by and interpreted in accordance with federal law and the laws of the State of Alabama. This Mortgage has been accepted by Lender in the State of Alabama.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Alabama as to all indebtedness secured by this Mortgage.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means CHARLIE G. RYLES and includes all co-signers and co-makers signing the Note.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means CHARLES G. RYLES AKA CHARLIE G. RYLES.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means REGIONS BANK, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated August 22, 2003, **in the original principal amount of $15,008.87** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

| | | |
|---|---|---|
| Loan No: 02Z00392.000021363 | MORTGAGE (Continued) | Recorded in the above MORTGAGE Book & Page 10-02-2003 10:26:48 AM  Page 6 |

(17)

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS. THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X _[signature]_ (Seal)
CHARLES G. RYLES AKA CHARLIE G. RYLES,
Individually

This Mortgage prepared by:

Name: JAMES R. KETCHUM
Address: 82 SOUTH COURT SQUARE
City, State, ZIP: TROY, AL 36081

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Alabama_ )
                    ) SS
COUNTY OF _Pike_   )

I, the undersigned authority, a Notary Public in and for said county in said state, hereby certify that CHARLES G. RYLES AKA CHARLIE G. RYLES, AN UNMARRIED MAN, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said Mortgage, he or she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this _23rd_ day of _August_, 20_03_.

_[signature]_
Notary Public

My commission expires _2-16-07_

(18)

EXHIBIT "A"

Lot 6, according to the plat of Thomas Heights Subdivision as recorded in the Office of the Judge of Probate of Pike County, Alabama in Plat Book 3, Page 127.

```
2003    89
Recorded in the Above
MORTGAGE  Book & Page
10-02-2003 10:26:46 AM
William C. Stone - Probate Judge
Pike County, AL
Book/Pg: 2003/83
Term/Cashier: VAULT / DONNAF
Tran: 3,42,53
Recorded: 10-02-2003 10:28:47
MTG Mortgage Tax              22.65
REC Recording Fee             37.00
SRF Special Recording Fee      7.00
Total Fees:  $ 66.65
```

Regions

STATE OF ALABAMA )
COUNTY OF Pike ) MORTGAGE AND SECURITY AGREEMENT
("Mortgage")

This document is also a financing statement filed as a fixture filing pursuant to Ala. Code § 7-9-402(6) (1975), and should be indexed in the index of financing statements under the names of Mortgagor, as debtor, and Mortgagee, as secured party.
☐ (Check box if applicable) This Mortgage is a "construction mortgage" within the meaning of such term in Ala. Code § 7-9-313(1)(c) (1975) and Ala. Code § 7-9-313(6) (1975).

KNOW ALL MEN BY THESE PRESENTS: That whereas CHARLES G. RYLES a/k/a CHARLES G. RYALS, a single man,

has become justly indebted to FIRST ALABAMA BANK, an Alabama banking corporation, whose address is P. O. Box 569, Troy, AL 36081 (the "Mortgagee"), in the principal sum of Forty Seven Thousand Five Hundred Dollars and No/100 ($ 47,500.00 ) Dollars, together with interest thereon, as evidenced by one or more promissory notes, guaranties or other documents delivered to, or letters of credit issued by, Mortgagee;

NOW, THEREFORE, in consideration of the premises and in order to secure the payment of said indebtedness (including any future advances) and any renewal or extensions thereof and any other indebtedness now or hereafter owed by any of the above-named to Mortgagee, whether such indebtedness is primary or secondary, direct or indirect, contingent or absolute, matured or unmatured, joint or several, or otherwise secured or not (except a principal dwelling shall not secure any such other indebtedness incurred for personal, family, or household purposes unless a right of rescission has been given or the transaction is otherwise exempt from federal regulations applicable to consumer credit), and to secure compliance with all of the covenants and stipulations hereinafter contained, CHARLES G. RYLES a/k/a

CHARLES G. RYALS

(whether one or more, the "Mortgagor") does hereby grant, bargain, sell and convey unto Mortgagee the real property situated in Pike County, State of Alabama, that is described below or in an attachment or exhibit hereto:

Parcel #1: Lot 6, according to the plat of Thomas Heights Subdivision as recorded in the Office of the Judge of Probate of Pike County, Alabama in Plat Book 3, page 127.

Parcel #2: Lot 2, Block 1, of the Tate Street Area as shown on the Plat of Tate Street Subdivision on file in the Office of the Judge of Probate in Plat Book 3, page 109, Pike County Courthouse.

Together with all rents and other revenues thereof and all rights, privileges, easements, tenements, interests, improvements and appurtenances thereunto belonging or in any wise appertaining, including any after-acquired title and easements (collectively, the "Property"), also together with all rights, title and interests now or hereafter owned by Mortgagor in and to all buildings and improvements, windows, doors, heating, lighting, ventilating, air conditioning, refrigerating and cooking apparatus, elevators, plumbing, sprinkling systems, detection devices and other equipment and fixtures now or hereafter attached or appertaining to the Property (collectively, the "Improvements").

TO HAVE AND TO HOLD the same and every part thereof unto Mortgagee, its successors and assigns forever.

And for the consideration aforesaid, and as additional security for all of the indebtedness described above (including any future advances), Mortgagor hereby assigns and transfers to Mortgagee, and grants to Mortgagee a security interest in, all building materials, equipment, fixtures and fittings of every kind or character that improve or are intended to improve the Property, including, without limitation, all lumber, bricks, building blocks, sand, cement, roofing materials, paint, doors, windows, nails, wiring, hardware, plumbing and plumbing fixtures, heating and air conditioning equipment, electrical and gas equipment, piping, decorative fixtures, and in general all building materials, equipment and appliances of every kind and character, wherever located or stored, and whether now owned or hereafter acquired by Mortgagor (collectively, the "Personal Property"); provided, however, that for any consumer credit obligation secured hereby, Mortgagee waives any non-purchase money security interest in "household goods" as defined in federal regulations applicable to unfair or deceptive credit contract provisions and further waives any security interest in "consumer goods" purchased more than twenty (20) days after Mortgagee gives value. The Property, the Improvements and the Personal Property are hereinafter collectively called the "Mortgaged Property."

And for the purpose of further securing the payment of said indebtedness Mortgagor warrants, covenants and agrees with Mortgagee, its successors and assigns as follows:

1. Mortgagor is lawfully seized in fee simple and possessed of the Mortgaged Property and has a good right to convey the same as aforesaid. The Mortgaged Property is free and clear of all encumbrances, easements, and restrictions not herein specifically mentioned. Mortgagor will warrant and forever defend the title to the Mortgaged Property against the claims of all persons whomsoever.

2. Mortgagor shall pay all taxes and assessments upon the Mortgaged Property, as well as all other liens or mortgages taking priority over this Mortgage. If the Mortgaged Property or any part thereof is a unit in a condominium or a planned unit development, Mortgagor shall perform all of Mortgagor's obligations under the declaration or covenants creating or covering the condominium or planned unit development, the bylaws and regulations of the condominium or planned unit development, and any related documents.

regulatory control over the ...gaged Property, and further covenants and agrees to provide Mortga... ...th notice and a copy of any and all environmental inspections and test results conducted in, on, or under the Mortgaged Property. Any action taken by Mortgagee pursuant hereto shall be solely for Mortgagee's benefit.

13. All the covenants and agreements of Mortgagor herein contained shall extend to and bind its or their heirs, executors, administrators, successors and assigns, and such covenants and agreements and all options, rights, privileges and powers herein given, granted or secured to Mortgagee shall inure to the benefit of the successors and/or assigns of Mortgagee. The representations, warranties, covenants, indemnities, and other obligations of Mortgagor contained herein shall survive the satisfaction of this Mortgage and shall remain in full force and effect thereafter. The provisions of this Mortgage and any documents evidencing the indebtedness secured hereby are severable, and the invalidity or enforceability of any provision of this Mortgage or of any of said documents shall not affect the validity and enforceability of the other provisions of this Mortgage or of said documents. The remedies provided to Mortgagee herein are cumulative with the rights and remedies of Mortgagee at law and in equity, and such rights and remedies may be exercised concurrently or consecutively. Time is of the essence with respect to every covenant contained in this Mortgage.

14. This Mortgage is and shall be deemed a security agreement as defined in the Alabama Uniform Commercial Code for purposes of the Personal Property described herein. Mortgagor agrees to execute and deliver on demand such other security agreements, financing statements and other documents as Mortgagee may reasonably request in order to perfect its security interest or to impose the lien hereof more specifically upon any of the Personal Property. On demand, Mortgagor will promptly pay all costs and expenses of filing financing statements, continuation statements, partial releases, and termination statements deemed necessary or appropriate by Mortgagee to establish and maintain the validity, perfection and priority of the security interest of Mortgagee hereby granted, or any modification thereof, and all costs and expenses of any record searches reasonably required by Mortgagee. A copy of this Mortgage may be filed as a financing statement in any public office.

15. The indebtedness hereby secured shall at once become due and payable and this Mortgage subject to foreclosure as herein provided at the option of Mortgagee when and if any statement of lien is filed under the statutes of Alabama relating to liens of mechanics and materialmen, without regard to the form and contents of such statement and without regard to the existence or non-existence of the debt or any part thereof or to the lien on which such statement is based, provided that said statement of lien is not otherwise satisfied by Mortgagor or bonded to the satisfaction of Mortgagee within three (3) business days after the date of filing.

UPON CONDITION, HOWEVER, that if any and all Indebtedness hereby secured (which in addition to the principal sum set forth above with interest thereon shall include renewals and extensions thereof and all future advances, payment of taxes and insurance, the satisfaction of prior encumbrances, and any other indebtedness owed to Mortgagee before the satisfaction of this Mortgage) is fully paid as it shall become due and payable, and Mortgagor does and performs all covenants and stipulations by it or them herein agreed to be done according to the tenor and effect hereof, then and in that event only, this conveyance and the security interest herein granted shall be and become null and void.

SHOULD DEFAULT be made in the payment of any indebtedness hereby secured or any renewals or extensions thereof or any part thereof, or should any interest thereon remain unpaid at maturity, or should default be made in the repayment of any sum expended by Mortgagee under the authority of any of the provisions of this Mortgage, or should the interest of Mortgagee in the Mortgaged Property become endangered by reason of the enforcement of any lien or encumbrance thereon, or should a petition to condemn any part of the Mortgaged Property be filed by any authority, person or entity having power of eminent domain, or should any law, either federal or state, be passed imposing or authorizing the imposition of a specific tax upon this Mortgage or the indebtedness hereby secured, or permitting or authorizing the deduction of any such tax from the principal or interest secured by this Mortgage or by virtue of which any tax or assessment upon the Mortgaged Property shall be charged against the owner of this Mortgage, or should at any time any of the stipulations and covenants contained in this Mortgage or in any documents evidencing the indebtedness secured hereby be declared invalid or unenforceable by any court of competent jurisdiction, or should Mortgagor fail to do and perform any other act or thing herein required or agreed to be done, THEN in any of said events the whole of the Indebtedness hereby secured, or any portion or part thereof which may at said date not have been paid, with interest thereon, shall at once become due and payable and this Mortgage subject to foreclosure at the option of Mortgagee, notice of the exercise of such option being hereby expressly waived by Mortgagor, and Mortgagee shall have the right to enter upon and take possession of the Property and Improvements and after or without taking such possession to sell the same before the County Court House door considered the front or main door to the County Court House in the county or division of the county where the Property, or any substantial part of the Property, is located, at public outcry for cash, after first giving notice of the time, place and terms of such sale by publication once a week for three successive weeks prior to said sale in some newspaper published in said county; and upon the payment of the purchase price, Mortgagee, or owner of the indebtedness and this Mortgage, or auctioneer at said sale, is authorized to execute to the purchaser for and in the name of Mortgagor a good and sufficient deed to the Property and Improvements, or any part thereof, sold.

Upon the occurrence of any event that would subject this Mortgage to foreclosure, Mortgagee shall have the rights and remedies of a secured party after default by its debtor under the Alabama Uniform Commercial Code, including, without limitation, the right to take possession of any of the Personal Property and to sell the same at one or more public or private sales, at the election of Mortgagee. At Mortgagee's request, Mortgagor agrees to assemble the Personal Property and to make the same available to Mortgagee at such place as Mortgagee shall reasonably designate. Mortgagor agrees that notice of the time and place of any public sale or of the time after which any private sale or other intended disposition of the Personal Property, or of any part thereof, will be held shall be sufficient if delivered to Mortgagor or mailed to Mortgagor at the address set forth herein or such other address as Mortgagor shall have furnished to Mortgagee in writing for the purpose, not less than seven days before the date of such sale or other intended disposition of the Personal Property.

Mortgagee shall apply the proceeds of any sale or sales under this Mortgage as follows: First, to the expense of advertising, selling and conveying (including a reasonable attorney's fee incurred by Mortgagee in connection therewith or in connection with any proceeding whatsoever, whether bankruptcy or otherwise, seeking to enjoin or stay the foreclosure of this Mortgage, or otherwise challenging the right of Mortgagee to foreclose this Mortgage); second, to the payment of any amounts that may have been expended or that may be appropriate to expend in paying insurance, taxes, assessments, and other liens and other mortgages, and in making repairs to the Mortgaged Property or any portion thereof, together with interest thereon; third, to the payment of the indebtedness hereby secured and interest thereon in such order as Mortgagee may elect, whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the date of sale; and fourth, the balance, if any, to be paid over to Mortgagor or to whomever then appears of record to be the owner of any of Mortgagor's interest in the Mortgaged Property, including without limitation, any subordinate lienholder. Mortgagee may bid and become the purchaser of the Mortgaged Property at any foreclosure sale hereunder. Mortgagor hereby waives any requirement that the Property and Improvements be sold in separate tracts and agrees that Mortgagee, in its sole discretion, may sell the Property and Improvements en masse regardless of the number of parcels hereby conveyed.

IN WITNESS WHEREOF, Mortgagor has hereunto set his, her or their hand(s) and seal(s), or has caused this Mortgage to be executed by its or their duly authorized officer or representative, this 7th day of December, 19 94.

This document was prepared by:

Mr. James Ketchum
First Alabama Bank
P. O. Box 569
Troy, AL 36081

MORTGAGOR:

_Charles G. Ryles_ (SEAL)
Charles G. Ryles a/k/a Charles G. Ryals

_____ (SEAL)


By _____

Its _____

5/3

| | | | | | BOOK | PAGE |
|---|---|---|---|---|---|---|
| | | | | | | 514 |

State of Alabama )
____Pike____ County )   CERTIFICATE

In compliance with Ala. Code § 40-22-2 (1975), the owner of this Mortgage hereby certifies that the amount of indebtedness presently incurred is ___47,500.00___ upon which the mortgage tax is paid herewith, and owner agrees that no additional or subsequent advances will be made under this Mortgage unless the Mortgage tax on such advances is paid into the appropriate Judge of Probate office no later than each September hereafter or a document evidencing such advances is filed for record in the above said office and the recording fee and tax applicable thereto paid.

Mortgagor: Charles G. Ryles, a/k/a Charles G. Ryals

Date, Time and Volume and Page of recording as shown hereon.

Mortgagee: First Alabama Bank

By _Jane R. Ketchum_
Title: James R. Ketchum, its Vice President

STATE OF ALABAMA )
COUNTY OF __PIKE__ )   INDIVIDUAL ACKNOWLEDGEMENT

I, __Sheila D. Lee__, a Notary Public in and for said County, in said State, hereby certify that Charles G. Ryles, a single man, whose name is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, __he__ executed the same voluntarily on the day the same bears date.

Given under my hand and official seal, this __7th__ day of __December__, 19__94__.

_Sheila D. Lee_
Notary Public
My commission expires: _____

SHEILA D. LEE
Notary Public, Pike Co., AL
My Comm. Expires Aug. 1, 1998

STATE OF ALABAMA )
COUNTY OF_____ )   INDIVIDUAL ACKNOWLEDGEMENT

I, _____, a Notary Public in and for said County, in said State, hereby certify that _____, whose name is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, _____ executed the same voluntarily on the day the same bears date.

Given under my hand and official seal, this _____ day of _____, 19_____.

Notary Public
My commission expires: _____

STATE OF ALABAMA )
COUNTY OF_____ )   CORPORATE ACKNOWLEDGEMENT

I, _____, a Notary Public in and for said County, in said State, hereby certify that _____, whose name as _____ of _____, a corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of said conveyance, _____ as such officer and with full authority, executed the same voluntarily for and as the act of said corporation, on the day the same bears date.

Given under my hand and official seal, this _____ day of _____, 19_____.

Notary Public
My commission expires: _____

PLEASE RETURN TO:

MORTGAGE AND SECURITY AGREEMENT

THE STATE OF ALABAMA,
Office of the Judge of Probate
I hereby certify that the within Mortgage was in this office for record on this _____ day of December 19 94 at 1:35 o'clock P.M., and duly recorded in Volume 418 of Mortgages, at page 511

_____
Judge of Probate

First Alabama Bank

$11.00
71.25
$82.25

RES-10M—Rev. 6/93

REGIONS BANK

By /s/ Deborah S. Renfroe
As Its Vice President

STATE OF ALABAMA

COUNTY OF MOBILE

    I, the undersigned, a Notary Public in and for said State and County, hereby certify that Deborah S. Renfroe, whose name as Vice President of REGIONS BANK, a state banking corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

    Given under my hand and official notarial seal this 14th day of January, 2005.

_____
Notary Public
State of Alabama at Large
My Commission Expires: NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Aug 22, 20__
BONDED THRU NOTARY PUBLIC UNDERWRITERS

    Notice is given as required by Alabama law that this instrument was prepared by Alan C. Christian, Attorney, Eighth Floor, Royal St. Francis Building, 104 St. Francis Street, Mobile, Alabama 36602.

293959.wpd      2

State of Alabama
Unified Judicial System

Form ARCivP-93    Rev. 5/99

**COVER SHEET
CIRCUIT COURT - CIVIL CASE**
(Not For Domestic Relations Cases)

Case Number: 7-2005-B-14
Date of Filing: _____, 2005
Judge Code: _____

## GENERAL INFORMATION

**IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA**

REGIONS BANK

**Plaintiff**

v.

ESTATE OF CHARLES G. RYLES, CHECKCARE SYSTEMS and fictitious parties A, B, C and D, being the heirs and/or devisees of Charles G. Ryles

**Defendants**

First Plaintiff: ☒ Business  ☐ Individual  ☐ Government  ☐ Other

First Defendant: ☐ Business  ☒ Individual  ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability
- ☐ TOMM - Malpractice - Medical
- ☐ TOLM - Malpractice - Legal
- ☐ TOOM - Malpractice - Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PROPERTY INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☒ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** (check one):
F ☒ INITIAL FILING
R ☐ REMANDED
A ☐ APPEAL FROM DISTRICT COURT
T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT
O ☐ OTHER: _____

HAS A JURY TRIAL BEEN DEMANDED?    ☐ YES  ☒ NO

Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala. R. Civ. P., for procedure.)

**RELIEF REQUESTED:**    ☐ MONETARY AWARD REQUESTED    ☒ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
CHR010

January 14, 2005
Date

_[signature]_
Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**    ☐ YES    ☐ NO    ☒ UNDECIDED